IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

_____

No. 17-0208

FILED
June 1, 2018
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

January 2018 Term

STATE OF WEST VIRGINIA,
Respondent

v.

GLEN EARNEST BLACKA,
Petitioner

_____

Appeal from the Circuit Court of Mineral County
The Honorable Lynn A. Nelson, Judge
Civil Action No. 15-F-86

VACATED AND REMANDED

_____

Submitted: May 9, 2018
Filed: June 1, 2018

Ramon Rozas III, Esq.
Rozas Law Office, LLC
Cumberland, Maryland
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Shannon Frederick Kiser, Esq.
Assistant Attorney General
Mary M. Downey, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the State

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court

1. "Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed de novo." Syl. Pt. 1, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995).

2. "When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syl. Pt. 4, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).

3. "Whenever the State violates a sentencing neutrality provision of a plea agreement, the violation seriously affects the fairness, integrity and public reputation of the proceeding." Syl. Pt. 8, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).

4. "When a plea agreement has been breached by the State, it is the province of this Court, or the trial court in the first instance, and not the defendant, to decide whether to grant specific performance of the plea agreement or permit withdrawal of the guilty plea." Syl. Pt. 9, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).

Workman, Chief Justice:

Glen Earnest Blacka (hereinafter "the petitioner") appeals an order of the Circuit Court of Mineral County, West Virginia, sentencing him to ten to twenty years for each of three sexual abuse convictions, with the sentences to be served consecutively. Pursuant to a plea agreement, the State of West Virginia (hereinafter "the State") agreed to remain silent at sentencing; however, during the sentencing hearing, the State ultimately recommended to the circuit court that consecutive sentences be imposed. Upon review of the appendix record, arguments of counsel, and applicable precedent, this Court vacates the sentencing order and remands for further proceedings consistent with this opinion.

I. Factual and Procedural History

On May 4, 2015, the Mineral County Grand Jury returned an indictment charging the petitioner with multiple counts of sexual assault, incest, and sexual abuse inflicted upon his three step-daughters. The petitioner pled guilty to three counts of the felony offense of sexual abuse by a parent, guardian, or custodian on October 4, 2016. Pursuant to a plea agreement, the State agreed to dismiss the remaining charges and "remain silent on a recommendation at sentencing."

1

Despite its agreement to remain silent, the State recommended the imposition of consecutive sentences during a February 13, 2017, sentencing hearing. The following exchange occurred at that hearing:

> MR. PANCAKE [Prosecuting Attorney]: And the State is of the opinion that Mr. --
>
> MR. ROZAS [Petitioner's Attorney]: Objection.
>
> THE COURT: About?
>
> MR. ROZAS: With the plea agreement, he's not allowed to express an opinion, Your Honor. He was going to remain silent at sentencing.
>
> MR. PANCAKE: But –
>
> THE COURT: Well, he can comment on what he said. He's not making any recommendations.
>
> MR. PANCAKE: Right. I'm just –
>
> MR. ROZAS: Okay, Your Honor, as long as he doesn't make a recommendation as whether he thinks probation is appropriate or not or what the sentence should be.
>
> THE COURT: All right. Do you have anything else, Mr. Pancake.
>
> MR. PANCAKE: Well, just a couple comments, Judge. In the [c]ourt system, we see heinous cases. And they unfortunately occur, and they occur an often – a quite often amount for those that are in the legal system. I do believe that this is one of the more heinous cases that we've come across in recent years, Judge.
>
> The [c]ourt has heard comments from the victims in this case – which I won't comment any further on those. I will not make

any further comments on the case. What the State would recommend, though, however, Judge, is based upon what has occurred –

MR. ROZAS: Objection.

THE COURT: I have an objection. Go ahead, Mr. Rozas. You said you had some arguments.

MR. ROZAS: Thank you.

THE COURT: You agreed to stand silent, I'll listen to his argument.

MR. PANCAKE: I was just going to say – recommend that they run consecutive and not concurrent.

MR. ROZAS: Objection, Your Honor.

THE COURT: Okay, I'm not listening to what the State said there.

MR. ROZAS: Thank you, Your Honor.


On February 22, 2017, the circuit court imposed consecutive sentences of ten to twenty years for each count and remarked upon "a lot of rumors and speculations" about things occurring "up in Blackaville." The petitioner appeals, contending the State breached the plea agreement by failing to remain silent at sentencing and he should have the right to elect between withdrawing his guilty plea or having a new trial judge sentence him. He further asserts that the circuit court's comments regarding rumors and speculation constitute reversible error. Based upon this Court's decision to vacate the sentencing order and remand on the issue of the breach of the plea agreement, we do not address the petitioner's

assignment of error regarding the circuit court's allegedly inappropriate reliance upon innuendo and rumors.

## II. Standard of Review

In syllabus point one of *State v. Wilson*, 237 W.Va. 288, 787 S.E.2d 559 (2016), this Court explained the standard of review for matters involving an alleged breach of a plea agreement:

> "'Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed de novo.' Syl. Pt. 1, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995)." Syllabus point 1, *State v. Shrader*, 234 W.Va. 381, 765 S.E.2d 270 (2014).

Cognizant of that dual approach as our standard of review, we address the contentions of the parties.

## III. Discussion

4

The petitioner argues that the State breached the plea agreement by failing to remain silent at sentencing and that he consequently is entitled to either specific performance of the agreement before a different sentencing judge or withdrawal of the guilty plea. This Court has been unequivocal in its commitment to the inviolability of plea agreements, recognizing that "[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." *Brewer*, 195 W.Va. at 192, 465 S.E.2d at 192; *see also* Syllabus, *State ex rel. Gray v. McClure*, 161 W.Va. 488, 242 S.E.2d 704 (1978) ("A prosecuting attorney or his successor is bound to the terms of a plea agreement once the defendant enters into a plea of guilty or otherwise acts to his substantial detriment in reliance thereon."). In syllabus point four of *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998), this Court again emphasized the significance of a plea agreement between a defendant and the State and held: "When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syllabus point eight of *Myers* continued the exposition upon the importance of a plea agreement, providing: "Whenever the State violates a sentencing neutrality provision of a plea agreement, the violation seriously affects the fairness, integrity and public reputation of the proceeding."

With specific reference to the failure of the State to remain silent after promising to do so, this Court observed that a plea agreement may be breached "where the

State, after having agreed to remain neutral as to the sentence to be imposed, fails to do so." *Duncil v. Kaufman*, 183 W.Va. 175, 183, 394 S.E.2d 870, 878 (1990). Engaging in an illuminating analysis of plea agreement breaches in *Santobello v. New York*, 404 U.S. 257 (1971), the United States Supreme Court found that the State had breached its agreement to remain silent at the defendant's sentencing and explained "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. As in the present case, the State in *Santobello* asserted that the breach did not affect the judge's decision regarding the defendant's ultimate sentence and that the sentence should consequently not be disturbed. The United States Supreme Court adamantly disagreed, stating:

> [The sentencing judge] stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. *Nevertheless*, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state court for further consideration. . . . We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

*Id.* 262-63 (emphasis supplied).

Based upon that incisive reasoning, we find no merit to the State's assertion in the present case that the sentence should remain undisturbed simply because the circuit

6

court indicated that it was "not listening" to the prosecutor's argument about consecutive sentencing. *See also United States v. McCray*, 849 F.2d 304, 305-06 (8th Cir. 1988) ( "The fact that the district court stated that the government's remark did not influence its decision does not ameliorate the government's breach."). The State in this case further argues that any breach is immaterial and did not contribute to the sentence imposed, thereby essentially constituting harmless error, if error at all. In *Myers*,[1] this Court examined the requirement for the State "to prove beyond a reasonable doubt that its breach of the plea agreement did not prejudice the outcome of the proceeding." 204 W.Va. at 463, 513 S.E.2d at 690. We concluded that "[m]erely showing that the trial court would have sentenced a defendant upon the same terms, even without such a breach, will not satisfy the State's burden." *Id*.

This conclusion is entirely consistent with the analysis in *State v. Urista*, 293 P.3d 738 (Kan. 2013). In that case, the Supreme Court of Kansas premised its holdings upon the principle that a defendant is denied due process when a plea agreement is breached by the State's failure to stand silent at sentencing. "This is true even if the sentencing judge was not influenced by the State's presentation at sentencing." *Id.* at 751.

---

[1]Unlike the situation in the present case, the defendant in *Myers* had not objected to the breach; thus, this Court was required to engage in an evaluation of the plain error doctrine and its applicability. *See Myers*, 204 W.Va. at 455, 513 S.E.2d at 682. Although the plain error evaluation is not necessary in the present case due to the petitioner's timely objection, the ultimate discussion in *Myers* with regard to the harmless error rule is applicable to our analysis of this case.

7

Accordingly, if the State breaches its plea agreement promise — and the defendant raises a timely objection to the breach — such a breach will constitute harmless error only if a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement.

*Id.* (citations omitted); *see also Puckett v. U.S.*, 556 U.S. 129, 140 (2009) (discussing application of harmless error principles to breach of plea agreement).

Similarly, in *State v. Birge*, 638 N.W.2d 529 (Neb. 2002), the Supreme Court of Nebraska analyzed the reasoning of *Santobello* and explained: "[O]nce the State has violated the plea agreement by failing to remain silent at sentencing, the violation cannot be cured either by the prosecutor's offer to withdraw the comments or by the trial court's statement that it will not be influenced by the prosecutor's comments in imposing sentence." *Id*. at 535-36. "Instead, relief must be afforded by either withdrawal of the plea or specific performance of the plea agreement in the form of sentencing before a different judge." *Id.* at 536.

With specific regard to the remedy for the State's breach of a plea agreement, this Court has explained that "[t]here are two possible remedies for a broken plea agreement — specific performance of the plea agreement or permitting the defendant to withdraw his plea." *Brewer,* 195 W. Va. at 189, 465 S.E.2d at 189, syl. pt 8. The ultimate decision of which alternative is most appropriate is to be made by this Court, rather than a defendant.

8

In syllabus point nine of *Myers*, this Court explained: "When a plea agreement has been breached by the State, it is the province of this Court, or the trial court in the first instance, and not the defendant, to decide whether to grant specific performance of the plea agreement or permit withdrawal of the guilty plea." *See also McCray*, 849 F.2d 304, 305-06 (8th Cir. 1988) ("When the government breaches its promise to remain silent at sentencing, resentencing is required."); *State v. Peterson*, 293 P.3d 730, 738 (Kan. 2013) (holding that resentencing before different judge remedy for State's breach of plea agreement); *Brewer,* 195 W.Va. at 198 n.18, 465 S.E.2d at 198 n.18 ("While the choice of remedy is normally left to the discretion of the sentencing court, *see Santobello*, 404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433, this Court has repeatedly expressed a preference for specific performance of the agreement rather than vacating the plea.").

As emphasized in *Urista*, the "decision to direct a new sentencing hearing before a different judge in no way reflects on the district court judge who originally sentenced [the defendant]." 293 P.3d at 751. It is not the judge who has committed the violation. "The error here rests squarely with the State. The appearance of judicial neutrality will be best served if the new sentencing hearing is conducted by a different judge." *Id.* As this Court articulated in *Myers*, decisions regarding plea bargain violations must be guided by the "scrupulous standard applicable to prosecutors and courts throughout the acceptance and implementation of the plea agreement." 204 W.Va. at 458, 513 S.E.2d at 685. The plea agreement "phase of criminal justice, and the adjudicative element inherent in accepting a

9

plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello*, 404 U.S. at 262.

This Court finds that the appropriate remedy for the breach of the plea agreement in this case is specific performance of the agreement in a new sentencing hearing before a different judge. We further emphasize the atrociousness of the prosecutor's actions in this case. Despite the multiple objections by counsel for the petitioner, the prosecutor insisted upon injecting comments clearly prohibited by the plea agreement. This is conduct incongruous with the duties of an officer of the court. This Court has referenced a "prosecutor as an officer of the Court" in several contexts. *State v. Schlatman*, 233 W.Va. 84, 90, 755 S.E.2d 1, 7 (2014). We have delineated "the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law." *State v. Boyd*, 160 W.Va. 234, 242-43, 233 S.E.2d 710, 717 (1977); *see also State v. Wilson*, 6 P.3d 637, 639 (Wash. Ct. App. 2000) ("Plea agreements concern fundamental rights of the accused, and invoke due process considerations that require a prosecutor to adhere to the terms of the agreement." (footnote omitted)); *State v. Tourtellotte*, 564 P.2d 799, 802 (Wash. 1977) ("If a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question.").

Given the prosecutor's unyielding and improper persistence in the prior sentencing hearing, it would be inappropriate to permit that prosecutor to participate in the sentencing hearing upon remand. Consequently, another prosecutor should manage this sentencing matter upon remand.

## IV. Conclusion

Based upon the foregoing, this Court vacates the order sentencing the petitioner and remands this matter for the appointment of a new judge to sentence the petitioner pursuant to his guilty plea.

Vacated and Remanded.